1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRANDY RENAY BRAMMER,<br><br>                  Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>                  Defendant. | Case No. EDCV 15-0756 SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

     Brandy Renay Brammer ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits ("DIB") and Supplement Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.

For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings consistent with this decision.

## II.

### PROCEDURAL HISTORY

On May 21, 2009, Plaintiff filed for DIB and SSI, claiming that she became disabled on September 25, 1999. (Administrative Record ("AR") 264-67, 277-83). Plaintiff based her alleged disability on "[l]ower back injury, bu[l]ging disc, deg[enerative] disc,[]nerve pain, failed surgery, pinched nerves." (AR 313). The Agency denied Plaintiff's applications on August 22, 2009 (AR 131-37) and upon reconsideration on March 18, 2010. (AR 140-44).

Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Jay E. Levine on May 12, 2011. (AR 81-107). On June 24, 2011, ALJ Levine determined that Plaintiff was not disabled. (AR 113-22).

Plaintiff filed a request for review of ALJ Levine's decision, which the Appeals Council (the "Council") granted. (AR 127). On November 16, 2012, the Council vacated the ALJ's decision and remanded the matter for further proceedings. (AR 127-29). Upon remand, the Council directed the ALJ to further consider whether Plaintiff was capable of performing any of her past relevant work, further evaluate Plaintiff's mental

impairment, and give further consideration to Plaintiff's maximum RFC during the entire period at issue. (AR 128). Further, if necessary the ALJ was required to obtain evidence from a vocational expert. (AR 129).

On April 25, 2013, ALJ Tamara Turner-Jones (the "ALJ") conducted a hearing following the Council's remand order. (AR 41-80). On June 14, 2013, the ALJ issued an unfavorable decision. (AR 13-28). Plaintiff sought review before the Council (AR 7-9), which the Council denied on February 20, 2015. (AR 1-4). The ALJ's determination thus became the final decision of the Commissioner. Plaintiff filed the instant action on April 17, 2015.

### III.

### FACTUAL BACKGROUND

Plaintiff was born on February 20, 1980. (AR 26). She was nineteen years old as of the alleged disability onset date and twenty-three years old at the time of her hearing before the ALJ. (AR 43). In September 1999, Plaintiff suffered a work-related injury. (AR 434). Plaintiff's last-insured date was June 30, 2003. (AR 15).

1   **A.   <u>Relevant Medical Evidence</u>**

2

3       Dr.  Timothy  P.  Gray,  an  orthopaedic  surgeon,  provided

4   Plaintiff  treatment  of  one  to  two  sessions  per  month  between

5   January  2000  to  April  2002  in  connection  with  her  1999  workers'

6   compensation  claim.   (AR 370-441).   Dr.  Gray  primarily  treated

7   Plaintiff  for  her  complaints  of  low  back  pain  with  disk

8   degeneration  and  bilateral  leg  pain.   (<u>Id.</u>).   Dr.  Gray  noted  that

9   an  October  1999  MRI  of  Plaintiff's  lumbar  spine  revealed  a

10  "central  disk  herniation"  and  "some  minimal  degenerative  changes"

11  at  L4-5.   (AR 437).   Dr.  Gray  treated  Plaintiff's  pain  with  <u>inter</u>

12  <u>alia</u>,  physical  therapy,  injections,  pain  management,  a  back

13  brace,  and  medications,  including  Darvocet,  Vistaril,  Vioxx,

14  Tylenol #3, Tylenol #4, Prozac, Ultracet, and Paxil.  (AR 371-73,

15  377-80,  383-84,  387-88,  391,  393-94,  397-98,  401,  403,  406-07,

16  408,  411,  415,  419,  423,  425,  426,  429,  431,  432,  438-39).   On

17  September  29,  2000,  Plaintiff  underwent  lumbar  diskograms  which

18  revealed  positive  pain  and  an  annular  tear  at  L4-5  and  possibly

19  at  L5-S1.   (AR 409-10).   On  December  5,  2000,  Plaintiff  underwent

20  an  IDET  procedure  at  L4-5  and  L5-S1.   (AR 403, 405).   In  June

21  2001,  Plaintiff  began  to  complain  of  low  back  pain  again,  and

22  continued  to  do  so  through  April  2002,  Dr.  Gray's  last  treatment

23  note  of  record.   (AR 371-400).   While  he  treated  Plaintiff,  Dr.

24  Gray  primarily  placed  Plaintiff  on  modified  work  duty,  limited  to

25  sedentary  or  light  work  in  two  to  four  hour  shifts.   (AR 371-73,

26  378-79,  393,  398,  401-02,  426-27,  429,  431-32).

27

28

1    Dr. Thomas Haider, Plaintiff's more recent treating
2  physician, who also treated Plaintiff in connection with her
3  workers' compensation claim, saw Plaintiff at least sixty times
4  between October 2004 to April 2013 for complaints of low back and
5  leg pain. (AR 567-673, 799-864). On November 2, 2006, Dr.
6  Haider performed on Plaintiff a laminotomy, discectomy, and
7  foraminotomy at L4-5 on the right side. (AR 494-95). After the
8  surgery, Plaintiff reported worsening of symptoms. (AR 581, 587,
9  591, 597, 603-04, 606, 613-14, 619, 621). Dr. Haider reported
10  that a January 2008 radiograph of Plaintiff's cervical spine
11  showed "straightening as well as reversal of cervical lordosis
12  [and] spondylosis of the C2-C4 levels." (AR 599). A July 2008
13  MRI of Plaintiff's lumbar spine showed "continuation of prominent
14  posterior disc bulge measuring 4 mm in size at the level of L4-
15  5," "bilateral foraminal stenosis," "disc dessication" at L4-5,
16  "mild bilateral facet arthropathy" at L3-4 and L5-S1, and
17  "diffuse disc desiccation" at L3-4, L4-5, and L5-S1. (AR 582).
18
19    Between 2004 and 2008, Dr. Haider treated Plaintiff with
20  inter alia, trigger point injections (AR 585, 602 647) and
21  narcotic pain medications, including Fentanyl patches, Norco,
22  Duragesics, Lorcet, and Ultram. (AR 582, 589, 592, 595, 599,
23  605, 607, 613, 615, 622, 625-26, 627, 636, 638, 645, 649, 651,
24  653, 655, 657, 661, 663, 665, 669-70). In October 2008, due to
25  difficulty controlling her medications, Plaintiff entered an in-
26  patient detox program. (AR 576, 579). Between 2009 and 2013,
27  Dr. Haider treated Plaintiff with trigger point injections, heat
28  wraps, and non-narcotic pain medications. (AR 569, 802, 810,

812-13, 820, 823-25, 829-30, 832, 837-38, 839-40, 843, 845-46, 853). A September 2009 MRI of Plaintiff's lumbar spine revealed "significant right sided forminal stenosis due to 4mm broad based disc bulging" and "moderate to severe disc dessication at L4-5." (AR 812). Based on a December 2011 MRI of Plaintiff's lumbar, Dr. Haider noted that there was "progression of the severe disc space collapse at L4-5," "central and forminal stenosis secondary to a 3.8 mm circumferential disc bulge as well as bilateral facet arthrosis," and "degenerative disc disease with a 2.5 mm circumferential disc bulge" at L5-S1. (AR 821). An April 2013, MRI of Plaintiff's lumbar spine revealed "[r]ight laminectomy at L4," "[g]rade 1 retrolisthesis of L4," a "3.8 mm circumferential disc bulge" at L4-5, "[b]ilateral facet arthrosis and moderate bilateral neural foraminal narrowing" at L4-5 and L5-S1, and a "2.8 mm disc bulge" at L5-S1. (AR 855). An April 2013 eletrodiagnostic report also revealed mild to moderate right L5 and S1 sensory radiculopathy. (AR 856). Between 2005 and 2013, Dr. Haider's progress notes repeatedly indicated that Plaintiff had difficulty walking, difficulty changing positions and getting onto the examining table, tenderness over the low back, muscle spasm, restricted motion with pain of the lumbar, guarding with motion, antalgic gait, and/or positive straight leg test bilaterally. (AR 568, 572, 576, 578, 582, 585, 588, 592, 595, 598, 602, 604, 606, 610, 612, 614, 619, 629, 631, 635, 637, 640, 643, 647, 653, 655, 661, 665, 800, 802, 810, 812, 816, 818, 823, 828, 830, 832).

1    On April 23, 2013, Dr. Haider completed a "Physical Residual
2  Capacity Question."   (AR 860-64).   In the questionnaire, Dr.
3  Haider diagnosed Plaintiff with "status post laminectomy lumbar
4  surgery in 2006."  (AR 860).  He noted his clinical and objective
5  findings included positive MRI, nerve conduction, and x-ray
6  findings.  (Id.).  Plaintiff's treatment included short courses
7  of physical therapy, medications, injections, MRIs, and surgery.
8  (AR 861).  He opined that Plaintiff could occasionally carry ten
9  pounds.  (AR 862).  She has significant limitations in doing
10  repetitive reaching, handling or fingering.  (Id.).  Plaintiff
11  has marked limitation in bending and twisting at the waist.  (AR
12  862-63).   She can walk one block without rest and can
13  continuously sit and stand for fifteen minutes every hour.  (AR
14  863).  Plaintiff can sit for twenty minutes and stand for fifteen
15  minutes in a less than two-hour period.  (Id.).  She can also sit
16  for forty minutes and stand for twenty-five minutes in a two-hour
17  period.  (Id.).  Plaintiff must walk every fifteen minutes for
18  ten minutes each time.  (Id.).  She would also need to shift
19  positions and take unscheduled breaks.   (Id.).   Finally,
20  Plaintiff would be absent from work more than three times a month
21  due to her impairments or treatment.  (AR 864).

22
23
24
25
26
27
28

7

IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)  Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so,

8

1          the claimant is found disabled.  If not, proceed

2          to step four.

3     (4)  Is the claimant capable of performing her past

4          work?  If so, the claimant is found not disabled.

5          If not, proceed to step five.

6     (5)  Is the claimant able to do any other work?  If

7          not, the claimant is found disabled.  If so, the

8          claimant is found not disabled.

9

10    Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

11    262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20

12    C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

13

14        The claimant has the burden of proof at steps one through

15    four, and the Commissioner has the burden of proof at step five.

16    Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an

17    affirmative duty to assist the claimant in developing the record

18    at every step of the inquiry.  Id. at 954.  If, at step four, the

19    claimant meets her burden of establishing an inability to perform

20    past work, the Commissioner must show that the claimant can

21    perform some other work that exists in "significant numbers" in

22    the national economy, taking into account the claimant's residual

23    functional capacity ("RFC"), age, education, and work experience.

24    Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20

25    C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do

26    so by the testimony of a VE or by reference to the Medical-

27    Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

28    Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel,

                                   9

240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take VE testimony.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since her alleged onset date of September 25, 1999.  (AR 15).  At step two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, status post laminotomy and diskectomy, sprain/strain of the cervical spine, asthma, and obesity.  (AR 16).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (AR 18).  The ALJ then found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to
> perform a range of sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) and SSR 83-10 specifically

1    as follows: [Plaintiff] can lift and/or carry up to 10

2    pounds; she can stand and/or walk for two hours out of

3    an eight-hour workday with customary breaks; she can

4    sit for six hours out of an eight-hour workday with

5    customary breaks; she can occasionally kneel, stoop,

6    crawl, or crouch; she can occasionally climb ramps or

7    stairs, but she can never climb ladders, ropes and

8    scaffolds; she can [] frequently use the hands for

9    fine and gross manipulations; she can occasionally

10   reach overhead bilaterally (above shoulder level); she

11   can frequently rotate the neck fully from side to

12   side; she must avoid exposure to unprotected heights

13   and dangerous machinery; she must avoid concentrated

14   exposure to extremely cold temperatures and pulmonary

15   irritants such as dusts, fumes, gases, and odors;

16   [Plaintiff] can sustain concentration, attention,

17   persistence and pace in at least two-hour blocks of

18   time; and she can interact appropriately with

19   coworkers, supervisors, and the general public; due to

20   the side effects of medication and chronic pain,

21   [Plaintiff] is limited to unskilled tasks and she will

22   be off-task for five percent of the workday.

23

24   (Id.).

25

26

27

28

11

In making this finding, the ALJ considered Plaintiff's subjective allegations, but did not find them fully credible. (AR 20-25).  The ALJ also noted that:

> No single assessment has been completely adopted as the [RFC] determined here.  In viewing the totality of the evidence in a light most favorable to [Plaintiff], the undersigned has assessed those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole. The undersigned has also more than generously considered [Plaintiff's] subjective complaints of chronic pain and problems with her neck and upper extremities.  The [RFC] assessed herein more than accommodates for [Plaintiff's] actual limitations.

(AR 26).

At step four, the ALJ found that Plaintiff has no past relevant work.  (Id.).  At step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, she could perform jobs that exist in significant numbers in the national economy.  (Id.).  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform the requirements of lens gauger, table worker, addresser, surveillance system monitor, and bench assembler.  (AR 27).  Accordingly, the ALJ found that Plaintiff was not disabled through the date of the decision.  (AR 28).

1

**VI.**

2

**STANDARD OF REVIEW**

3

4       Under 42 U.S.C. § 405(g), a district court may review the

5   Commissioner's decision to deny benefits.  The court may set the

6   decision aside when the ALJ's findings are based on legal error

7   or are not supported by substantial evidence in the record as a

8   whole.  <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001)

9   (citing <u>Tackett</u>, 180 F.3d at 1097).  "Substantial evidence is

10  more than a scintilla, but less than a preponderance." <u>Reddick</u>,

11  157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066

12  (9th Cir. 1997)).  It is "relevant evidence which a reasonable

13  person might accept as adequate to support a conclusion." <u>Id.</u>

14  (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen v. Chater</u>, 80 F.3d

15  1273, 1279 (9th Cir. 1997)).

16

17      To determine whether substantial evidence supports a

18  finding, the court must "'consider the record as a whole,

19  weighing both evidence that supports and evidence that detracts

20  from the [Commissioner's] conclusion.'"  <u>Aukland</u>, 257 F.3d at

21  1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir.

22  1993)).  If the evidence can reasonably support either affirming

23  or reversing that conclusion, the court may not substitute its

24  judgment for the Commissioner's.  <u>Reddick</u>, 157 F.3d at 720-21

25  (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

26

27

28

1          **VII.**

2        **DISCUSSION**

3

4        Plaintiff contends that the Commissioner's decision should

5   be overturned for two reasons.  First, Plaintiff contends the ALJ

6   did not properly consider the opinion of treating physicians, Dr.

7   Gray    and    Dr.    Haider,    in    determining    Plaintiff's    RFC.

8   (Plaintiff's Memorandum in Support of Complaint (the "MSC"), Dkt.

9   No.  14,  at  4-9;  Plaintiff's  Reply  Memorandum  in  Support  of

10  Complaint  ("Reply"),  Dkt.  No.  16,  at  3-5).   Second,  Plaintiff

11  claims that the ALJ did not properly consider her subjective pain

12  testimony.   (MSC at 9-13; Reply at 5-7).   Because the Court

13  concludes  that  the  ALJ  did  not  properly  consider  Plaintiff's

14  treating  physicians'  opinion,  it  is  unnecessary  to  address  the

15  remaining issue raised by Plaintiff.

16

17       **The   ALJ   Failed   To   Properly   Consider   The   Opinions   Of**

18       **Plaintiff's  Treating  Physicians  In  Determining  Plaintiff's**

19       **Residual Functional Capacity**

20

21       Social Security regulations require the ALJ to consider all

22  relevant medical evidence when determining whether a claimant is

23  disabled.   20 C.F.R. §§ 404.1520b, 416.927(c).   The opinions of

24  treating physicians are entitled to special weight because the

25  treating physician is hired to cure and has a better opportunity

26  to know and observe the claimant as an individual.   Connett v.

27  Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Thomas v. Barnhart,

28  278  F.3d  947,  956-57  (9th  Cir.  2002);  Magallanes v. Bowen,  881

14

1   F.2d 747, 751 (9th Cir. 1989).   Where the treating doctor's

2   opinion is not contradicted by another doctor, it may be rejected

3   only for "clear and convincing" reasons.   Lester v. Chater, 81

4   F.3d 821, 830 (9th Cir. 1995) (as amended).   Even if the treating

5   physician's opinion is contradicted by another doctor, the ALJ

6   may not reject this opinion without providing specific,

7   legitimate reasons, supported by substantial evidence in the

8   record.   Id. at 830-31; see also Orn v. Astrue, 495 F.3d 625, 632

9   (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198

10   (9th Cir. 2008).

11

12       **1.   Dr. Timothy P. Gray**

13

14

15       Plaintiff argues that the "ALJ was correct in stating that

16   Dr. Gray's records indicate that [Plaintiff] was released to

17   perform primarily sedentary work," however, the ALJ failed to

18   properly consider Dr. Gray's conclusion that Plaintiff would be

19   limited to working at that level only for two to four hours per

20   day. (MSC at 4-9; Reply at 3-5).   The Court agrees.

21       In determining Plaintiff's RFC, the ALJ noted that she gave

22   "significant weight, but not controlling weight to the opinions

23   expressed by Dr. Gray."   (AR 25).   The ALJ explained that

24   although Dr. Gray "felt throughout the workers' compensation

25   records that [Plaintiff] could perform at least sedentary work .

26   . . [s]ince his assessments of [Plaintiff's] capacity was done

27   within the workers' compensation setting and do not reflect the

28   specific function-by-function residual functional capacity

required by the Regulations, it is not accorded controlling weight." (Id.). Thus, the ALJ implicitly rejected Dr. Gray's findings that Plaintiff was limited to shifts of two to four hours, and failed to provide specific and legitimate reasons for doing so. The ALJ is required to consider all relevant medical evidence when determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520b, 416.927(c). The ALJ is also required to assess whether a claimant has the ability to work on a sustained basis. Reddick, 157 F.3d at 724. Thus, merely because Dr. Gray's opinion did not include a function-by-function RFC assessment was not a specific and legitimate reason to reject his opinion.

The ALJ also has a duty to translate Dr. Gray's workers' compensation findings into Social Security terms. Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988); Booth, 181 F. Supp. 2d at 1104. Although workers' compensation disability ratings are not controlling in Social Security cases, an ALJ must nevertheless evaluate medical opinions stated in workers' compensation terminology just as he would evaluate any other medical opinion. Id. The ALJ must "translate" terms of art contained in such medical terminology in order to accurately assess the implications of those opinions for the Social Security disability determination. See Desrosiers, 846 F.2d at 576. "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ

16

recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.'"  Booth, 181 F. Supp. 2d at 1105.  Here, although Dr. Gray made findings relevant to his workers' compensation evaluation of Plaintiff, they were not translated for determining Plaintiff's eligibility for social security benefits.

Because the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Gray's opinion, the case must be remanded to remedy this defect.  Upon remand, the ALJ must translate Dr. Gray's workers' compensation findings into appropriate social security terminology, and then either provide specific and legitimate reasons to reject Dr. Gray's opinions or incorporate the limitations provided by Dr. Gray into the RFC determination.

**2.   Dr. Thomas Haider**

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting Dr. Haider's opinions.  (MSC at 7-9; Reply at 5).  The Court agrees.

In determining Plaintiff's RFC, the ALJ considered Dr. Haider's April 23, 2013 "Physical Residual Functional Capacity Questionnaire."  (AR 860-64).  As noted by the ALJ, Dr. Haider opined that Plaintiff could lift and carry up to ten pounds.  (AR

17

25).   Plaintiff was limited in her ability to perform manipulative maneuvers with her hands and she had marked limitation her ability to twist at the waist.  (Id.).  She could walk for one block without rest and be absent from work more than three times per month.  (Id.).  Finally, the ALJ noted that Dr. Haider's opinion regarding Plaintiff's ability to sit and stand was "unclear and confusing."  (Id.).

Although the ALJ gave "great weight" to Dr. Haider's April 2013 assessment that Plaintiff could "lift and carry up to 10 pounds," she gave "minimal weight to the other limitations, as they are not well supported by the objective record as a whole." (AR 25).   More specifically, the ALJ rejected Dr. Haider's opinion that Plaintiff would be "absent more than three times per month [because it] is speculative and without substantial support from the record."  (Id.).  In support of her finding, the ALJ appears to cite to inter alia that: (1) Plaintiff retained the ability to ambulate effectively and she did not need an assistive device for ambulation or stability; (2) diagnostic imaging "revealed a moderate pathology in the lumbar spine at most" and "[e]letrodiagnostic testing only recently confirmed mild to moderate sensory radiculopathy"; (3) there is "nothing in the record, except for [Plaintiff's] subjective complaints, showing any significant limitations in the cervical spine or the upper extremities"; and (4) Plaintiff responded well to "conservative nonnarcotic pain medications and she has not had to seek emergency or urgent care for acute symptom exacerbations." (AR 25).   The Court finds these reasons are not specific and

legitimate reasons supported by substantial evidence to reject Dr. Haider's opinion.

As an initial matter, because the ALJ specifically found Dr. Haider's opinion regarding Plaintiff's ability to sit and stand "unclear and confusing," the ALJ had a duty to re-contact Dr. Haider for clarification rather than simply rejecting his opinion. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has a duty to develop the record further when there is ambiguous evidence).

Moreover, the ALJ erred in rejecting Dr. Haider's opinion as "speculative." As discussed above, Dr. Haider treated Plaintiff over the course of nearly nine years on a frequent and continual basis, and his opinion is supported by clinical findings and objective diagnostic testing. (AR 567-673, 799-864). Under these circumstances, the ALJ's assertion that Dr. Haider's opinion is "speculative" is not a specific and legitimate reason to reject his opinion.

Next, although the ALJ cites to moderate pathology in Plaintiff's lumbar spine, as well as mild to moderate sensory radiculopathy to reject Dr. Haider's opinion, the ALJ fails to explain how those findings are inconsistent with Dr. Haider's opinion.

The ALJ's next reasoning that the record "largely" shows that Plaintiff was able to ambulate effectively and there is nothing to indicate she was reliant on an assistive device for ambulation or stability lacks substantial support in the record. Numerous progress notes from Dr. Haider reflect that Plaintiff had "difficulty walking," "difficulty changing position and getting onto the examining table," "guarding with motion," "antalgic gate" and/or positive straight leg test. (AR 568, 572, 576, 578, 582, 585, 588, 592, 595, 598, 602, 604, 606, 610, 612, 614, 619, 629, 631, 635, 637, 640, 643, 647, 653, 655, 661, 665, 800, 802, 810, 812, 816, 818, 823, 828, 830, 832).

The ALJ's statement that there is "nothing in the record, except for [Plaintiff's] subjective complaints, showing any significant limitations in the cervical spine or the upper extremities" is contradicted by the record. Rather, the evidence reflects, Dr. Haider found on several occasions "tenderness in the cervical spine, left pericervical w/spasm, right pericervical w/spasm, and trapezius" and "evidence of muscle spasm at the cervical spine." (AR 572, 575, 581, 584, 587, 591, 594, 597). Dr. Haider also noted that "[r]adiographs of the cervical spine show cervical straightening as well as reversal of cervical lordosis as well as spondylosis of the C2-C4 level" and "severe muscle spasm." (AR 599). Thus, Dr. Haider did not base his opinions regarding Plaintiff's cervical spine or upper extremity limitations solely on Plaintiff's subjective complaints.

Finally, the finding that Plaintiff responded well to conservative non-narcotic pain medications is not entirely consistent with the record. As an initial matter, in 2008, Plaintiff underwent detoxification due to her inability to control the use of narcotic medications. As a result, Plaintiff was prescribed only non-narcotic medications after 2008. (AR 576, 579, 804). Dr. Haider's progress notes reflect that the non-narcotic medications were not effective in alleviating her pain because Plaintiff continually complained of increasing or severe pain, which Dr. Haider continued to treat through 2013. (AR 568, 571, 573, 800, 802, 810, 812, 823, 825, 828, 832, 837-38, 842-43, 845, 852-53). Plaintiff also requested, and was given several trigger point or nerve block injections to help alleviate her pain. (AR 568, 810, 812, 823-24, 828, 830, 843, 846, 853). Accordingly, the finding that Plaintiff "responded well to conservative nonnarcotic pain medications" is not supported by the medical evidence. Dr. Haider's progress notes chronicle Plaintiff's struggle with her back and leg pain, and at no point show sustained improvement or stabilization with conservative treatment. Thus, the ALJ's conclusion cannot be considered a specific and legitimate reason.

On remand, the ALJ should contact Dr. Haider, obtain clarification regarding his opinion, reconsider Dr. Haider's opinion, and as necessary, revise Plaintiff's RFC.

# VIII.

## CONCLUSION

Accordingly, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 29, 2015

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**